JOHN MURTLAND, PLAINTIFF, DEFENDANT IN ERROR, v. ATLANTIC CITY, DEFENDANT, PLAINTIFF IN ERROR.

Argued March 20, 1906—Decided March 4, 1907.

1. A city entered into a contract with A that he should construct· a receiving well twenty-five feet in diameter and thirty feet in the earth.
2. It appears that through the site fixed under the contract for the construction of the well there had been formerly sunk by the city an old concealed test well which had been abandoned. A claims that after sinking the receiving well twenty-seven and one-half feet, further work became impossible by reason of subterranean water rushing up through the old test well and flooding the excavation. He thereupon announced to the city that he had abandoned his contract, and thereafter brought an action against the city to recover damages caused by the presence of the old well.
3. On the trial the trial justice charged the jury that if it believed that the existence of the sunken well made the performance of the contract impossible, that the contractor had a right to rescind the contract and bring his action. *Held*, that there was error in not leaving to the jury the question whether when the site of the receiving well was designated the city could have reasonably apprehended that the presence of the old test well would render the performance of the contract impossible, and so whether the city fraudulently imposed upon the contractor a useless work.

On error to the Supreme Court.

For the plaintiff in error, *Clarence L. Cole.*

For the defendant in error, *George Bourgeois.*

The opinion of the court was delivered by

REED, J.  On June 7th, 1904, the board of water commissioners of Atlantic City entered into a contract with Murtland by the terms of which Murtland was to construct a pump well at such times and points and with such force as might be directed by the engineer.  It was agreed that the word "engineer" was understood to refer to the engineer and superintendent of the water department of Atlantic City or his successors in office.

The well was to be twenty-five feet in diameter and about thirty feet in depth.  A concrete floor was to be laid on the bottom and a curbing of brick and cement built up on the required line.

The contractor was to provide power and piping for pumping and draining the pit.  The price for the work was fixed at $4,475.

The point where the well was to be constructed was located by Mr. Myers, assistant engineer for the Atlantic City Water Works.

Mr. Murtland began to excavate for the work on June 24th. He says he had excavated to the depth of sixteen feet below the surface when a column of water burst through the hole in the bottom of the excavation.  He says he at once asked Mr. Myers what it meant, and that Mr. Myers told him it was an old test well; that they had been testing for water in that vicinity for the purpose of artesian wells, and not finding any, they had withdrawn the pipe.  Mr. Murtland says he fought the inflow of water as well as he could, and dug on until he reached a depth of twenty-seven feet six inches, and had only two feet six inches more to excavate when the test well burst out with such force that he was unable to continue his work.

This occurred on Tuesday afternoon, and until Saturday he tried every method suggested by himself or Mr. Myers to arrest the flow of water so as to make it possible to resume work, and was unable to do so. On Monday he returned and found affairs as before. The water department assisted in the endeavor to obviate the difficulty, and sunk an artesian well outside of the excavation to see if it would relieve the pressure upon the old test well, so that the pumps could take care of the water in the well Murtland was trying to construct.

This was a failure also, and in August Murtland announced to the board that he would not go on with the work.

The well was afterwards completed by the board of water commissioners, but not to the depth or according to the mode provided in the contract with Murtland.

In January, 1905, this action was brought. The declaration set out the contract of June as executed by Atlantic City, the defendant, by its agent, the Atlantic City water department. It set out that by this contract it became the duty of the defendant to designate the location for the construction of a well, where the construction thereof, to the best of its knowledge, should be possible of performance; that defendant selected a location over land on which it had previously constructed an artesian well, the piping in which had been withdrawn from the ground and no evidence thereof appeared on the surface of the ground; that the defendant did not notify the plaintiff of the existence of said well; that the plaintiff, in ignorance of its existence, purchased material and excavated to the depth of sixteen feet or thereabouts when the old well broke out; that the plaintiff still continued to dig until it became impossible to excavate to the depth of thirty feet; that the plaintiff, about September 1st, 1904, notified defendant of the impossibility of constructing said well, and then and there rescinded said contract. Another count of the declaration set out the same facts as the preceding count, except the fact of the rescission of contract, and then charges that, by reason of the impossibility of performance of the contract, the plaintiff became released by the act of defendant from further construction of the well.

In still another count the plaintiff, after setting out the facts charged as before, further charged that by reason of the deceptive, false, fraudulent and impossible designation of location for said pump well, the agreement became null and void.

Upon the trial of the cause the only question submitted to the jury aside from the question of damages was whether the presence of the old test well made the execution of the plaintiff's contract impossible. The trial court charged that if the jury believed that the existence of that sunken well made the performance of this contract impossible, Murtland was justified in rescinding his contract, and would have a right, under the circumstances, to bring his action. To this judicial statement there was an exception.

It is observed that the contract was not to construct a well at any particular point. It was to build at such point as might be directed by the engineer and superintendent of the water department of Atlantic City. This was a complete contract, which I assume would have given Mr. Murtland a right of action had the defendant's engineer refused to designate any point for construction, and this contract was possible of performance if there was any point where the work could have been executed. When the designation, however, was made by the servant of the water company the contract became one to build a well at that particular point.

The plaintiff's case rested entirely upon the proposition that to build the well described was at that point impossible. The contrariety of judicial sentiment respecting the obligation of one who covenants to do that which is impossible in respect of the question whether the impossibility nullifies the contract, or whether having covenanted he is bound to perform because he has covenanted, need not be discussed. Nor is there any reason for discussing the effect of such impossibility had the action been brought by the board of water commissioners of Atlantic City against Murtland for failure to perform his contract. This action is brought, as it is perceived, by Murtland against Atlantic City, although he, Murt-

land, has not executed his contract according to the terms of his agreement.

So far as concerns the plaintiff's right to recover for the amount of work he had already done when the impossibility of continuing the work became a demonstrated fact, recovery might rest upon the conduct of the defendant in adopting and using all or a portion of the work which Murtland had already done. The city, while not completing the work in conformity with the specifications under which Murtland was to work, did use the excavation which Murtland had already made.

The proposition is that Atlantic City shall pay Murtland not only for all the work he has done, but also damages for all the work he has not done, although by reason of the impossibility of performance the work may have been of no advantage to Atlantic City.

It is entirely clear that if both parties stand upon the same footing in respect to that element in the contract which made it impossible of execution, no such liability can rest upon Atlantic City.

To impose a liability upon either party there must be something in the covenant which expressly or impliedly provides for such a contingency, or there must be some conduct of the one which amounts to fraud upon the other party.

The vendor who knows of the non-existence of a thing he contracts to deliver is liable for his non-performance. *Hills* v. *Sughue,* 15 *M. & W.* 253.

In that case he had induced the parties to rely upon his contract, when he knew, or ought to have known, he could not perform.

Indeed, Professor Parsons remarks, that "if one for a valid consideration promises another to do that which is in fact impossible, and the promise is not obtained by actual or constructive fraud, and is not on its face obviously impossible, there seems to be no reason why the promisor should not be held to pay damages for breach of contract, not, in fact, for not doing what cannot be done, but for undertaking or promising to do it." 2 *Pars. Cont.* 185.

But, as already remarked, whether Murtland is bound to perform his contract is not the question now pressing, but whether he can recover against Atlantic City, and it is plain that he cannot, unless he was induced to enter into the contract by something which the water company did or neglected to do which amounted to deceit. All that appeared upon the trial was that one or more of defendant's servants had driven or bored an old test well which proved unserviceable for the purpose for which it was intended, and was abandoned and covered up.

Whether the board had in mind the presence of this old well at the time the location of the new well was designated, and, if so, whether that fact would have led them to suppose that it would not merely interfere with the work of the complainant, but render it entirely impossible, was a question not submitted to the jury at all.

Indeed, it is obvious from the testimony that if the completion of the well was impossible, it became so, not because of the presence of the well, but because of the character of the soil. As already remarked, the water began to flow from this well when Murtland had reached a depth of sixteen feet, and, notwithstanding this fact, Murtland proceeded to a depth of twenty-seven feet six inches, within two and one-half feet of the required depth. Murtland excavated eleven feet in spite of the flow of water. When he reached a depth of twenty-seven feet six inches he had approached within two feet six inches the bottom of the stratum of clay which had enclosed the stratum of water-bearing sand forty feet in depth and running down to another stratum of clay twenty feet thick. Between these two clay strata was compressed this water-bearing sand, having a pressure which would raise the water from eighteen to twenty feet if afforded a vent. When Murtland had reached a depth of twenty-seven feet six inches the layer of clay had become so thin that the verge of the old test hole easily crumbled away, and so the orifice was enlarged, and according to the testimony of Lamphin, who tested it, there was only two or three feet of clay left in the bottom which

corresponds with his statement that the stratum of clay was from eighteen to twenty-nine feet below the surface of the ground.

It is perceived, therefore, that if there had been no test hole Murtland in digging down to the prescribed depth of thirty feet would have dug away substantially all the clay sheath and liberated the water and sand of the under stratum.

Had the stratum of clay extended five feet deeper, the presence of the test well would have no more interfered with the excavation from twenty-seven feet six inches to thirty feet than the test well in fact interfered in digging from sixteen feet to twenty-seven feet six inches.

In view of these conditions, and assuming that the board of water commissioners knew of this well, it does not follow that in designating the point where Murtland was to do his work the defendant or its servants did or neglected to do anything by which a legal conclusion can be drawn that their conduct was intentionally or presumptively fraudulent.

It was certainly a question for the jury whether, when the site for the new well was designated, the city should reasonably have apprehended that the presence of the test well would render the performance of the contract impossible and so a useless contract be fraudulently imposed upon the plaintiff.

The judgment should be reversed.

*For affirmance*—None.

*For reversal*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 15.